SAMUEL S. JONES *vs.* ISAAC P. EMERSON and others.

Penobscot.    Opinion September 29, 1880.

*Poor debtor's bond.    Surrender to jailer.    Copy of the bond or of the execution and return to be given jailer.*

To save the penalty of his bond by performing its last condition, a poor debtor must seasonably "deliver himself into the custody of the jailer" and be received into jail, or deliver himself to the jailer at the jail in such a manner as will make it the duty of the jailer to receive him into custody in the jail.    To make it the duty of the jailer to receive a debtor the latter should not only seasonably offer to deliver himself, but at the same time to deliver to the jailer a copy of the bond, or of the execution and return thereon, at the jail.

ON EXCEPTIONS AND MOTION.

The case is stated in the opinion.

*V. A. & M. Sprague*, for the plaintiff.

*Josiah Crosby*, for the defendants.

VIRGIN, J.    Debt on a bond given on July 3, 1877, in accordance with R. S., c. 113, § 24, to procure the release from arrest on execution of the defendant Emerson, the execution debtor.

The defense set up before the jury was that Emerson performed the last condition in his bond, by "delivering himself into the custody of the jailer" on January 3, 1878.    If he sustained that defense, he has done everything he obligated himself to do, and thus saved the penalty of his bond.    *Rollins* v. *Dow*, 24 Maine, 123;  *White* v. *Estes*, 44 Maine, 21.

The jury, under instructions of the court, returned a verdict for the defendants, thereby finding that Emerson did perform his obligation; and the plaintiff has brought the case before the court on motion and exceptions.

At the trial, the plaintiff contended that to constitute performance Emerson should have delivered himself in such a manner as would make it the duty of the jailer to receive him into custody in the jail; and to that end Emerson should have offered not only to deliver himself, but at the same time, to deliver to the jailer a copy of the bond as some written evidence of identity,.

and of authority to the jailer to receive and detain him in jail. The presiding justice, however, instructed the jury that if Emerson "went to the jail or jail house, and there offered to deliver himself into the custody of the jailer, the bond was discharged, although he might not have a copy of the bond." Was this ruling correct?

The statute authorizing the debtor thus to save the penalty of his bond does not prescribe the mode and manner of doing it. Nothing is said of filing any written evidence with the jailer when he delivers himself, as it does in the case of bail surrendering their principal before a trial justice. In the latter case, the statute expressly provides that if the principal is surrendered before final judgment, the bail shall deliver to the officer an attested copy of the writ and return thereon; if after judgment, an attested copy of the entry of surrender; and in either case, the officer shall deliver it to the jailer with the prisoner; and it shall be a sufficient warrant to the officer for receiving and conveying him to jail, and to the jailer for holding him in custody. R. S., c. 85, § 15.

So when a tax payer is committed to jail for non payment of his tax, (R. S., c. 6, § 106), the collector or other officer making the commitment is required to give an attested copy of his warrant to the jailer, and certify the sum he is to pay as his tax, and the costs of arrest and commitment, &c.; and "such copy and certificate shall be a sufficient warrant to require the jailer to receive and keep such person in custody till he pays," &c. R. S., c. 6, § 143.

Neither does the statute require or expressly permit an officer, when he arrests on original writs (R. S., c. 81, § 2), or on *scire facias* (c. 81, § 4), to commit the arrested party. The specific duty of the officer is left to the mandate of the writ to take and safely keep, under which he must receive bail or commit. And it necessarily results from the delivery of a prisoner from one officer to another that there should pass with the prisoner some precept or copy thereof, as the authority by which such custody is to be sustained. *Atherton* v. *Gilmore,* 9 N. H. 185. So when committing a defendant on mesne process (c. 113, § 2), or on

execution (§ 20), there is no provision requiring any precept or copy to be filed with the jailer. But it is the universal practice, otherwise what justification would the jailer have on *habeas corpus?* How could he escape the penalty imposed in R. S., c. 99, § 25, or prevent his prisoner being discharged on that writ? The *habeas corpus* statute seems to take it for granted that the jailer or other officer shall be able to furnish the written evidence of his authority for depriving a citizen of his liberty. *Com.* v. *Waite,* 2 Pick. 445.

So R. S., c. 80, § § 28 and 29, defining the duties of the jailer in relation to keeping and exhibiting a calender and keeping files of the official papers or copies thereof specified therein, seem to be predicated upon the practice of having in his possession written evidence of the cause of each prisoner's detention. It is also essential *to* enable the jailer to make requisition on the creditor for payment of poor prisoner's board (R. S., c. 113, § 55), and to enable the town to recover expenses incurred. R. S., c. 24, § 26.

The universal practice has been for the debtor to deliver to the jailer, at the jail, when he delivers himself up to custody, either an attested copy of the execution and return thereon, or of the bond. In *White* v. *Estes,* 44 Maine, 21, the debtor delivered both. If the jailer receives him without either, the delivery would undoubtedly be sufficient, but he would not be bound to receive him without one or the other.

Even if this were otherwise, we have no doubt the verdict cannot stand; for the reason that, disregarding the express testimony of the jailer and his brother, and giving to that of Emerson its full probative force, it fails to show that he in fact offered to deliver himself to the jailer. At most he informed the jailer what he came to do and asked for information. He might as well claim to make a tender of money by telling the person to whom it was due that he came to make a tender, and asking how much was due without offering any money in fact.

*Motion and exceptions sustained.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.